W. T. SHAVER, Appellant, v. J. W. TURNER IMPROVE-
MENT COMPANY; HARRY B. FRASE, Auditor of Polk
County, Iowa; GEORGE L. DOBSON, Treasurer of Polk
County, Iowa.

SAMUEL B. CURTIS and CORA E. CURTIS, Heirs of BELINDA
CURTIS, Appellants, v. Same Defendants.

A. W. HUDSON, Appellant, v. Same Defendants.

**Municipal corporations:** PUBLIC IMPROVEMENT: EXERCISE OF POWER.
1 The statutes confer upon cities and towns power to improve
streets, after the necessity therefor has first been determined and
the preliminary steps taken conferring such power; but the man-
ner of exercising this power is seldom a jurisdictional question.
Thus where a city has complied with the preliminary statutory
requirements essential to an exercise of the power, the improve-
ment of a street at variance with the established grade is not
a jurisdictional defect, which will entitle a property owner to
enjoin an assessment for the improvement, but is an irregularity
for which complaint should be made before the city council and
an appeal taken from its adverse ruling. Overruling Hubbell
Sons & Co. v. Bennett Bros., 130 Iowa, 66.

**Same:** OBSERVANCE OF STATUTES. The statutes relating to the assess-
2 ment of property for public improvement should be quite strictly
followed, especially those governing the preliminary steps essen-
tial to the exercise of the power to make the improvement.

*Appeal from Polk District Court.*—HON. LAWRENCE DE
GRAFF, Judge.

WEDNESDAY, JUNE 5, 1912.

THE plaintiff was owner of the east forty-four feet
of lots five and six in block G in Scott & Dean's addition
to the city of Des Moines. The lots faced on East Third

street and for many years had been permanently improved with sidewalks, curbing, and brick pavement at a grade regularly established in 1870. This grade at the northeast corner of the lots was 21.35 feet above the datum plane, and 21.85 at the southeast corner thereof. In May and June, 1910, the J. W. Turner Improvement Company, acting under a contract with the city, paved said East Third street in front of said lots "with one course of paving brick upon a foundation of concrete with cement top filler;" said pavement being permanent. This was done without putting the bed of the street to the established grade, and said pavement was not laid so as to conform to the established grade but was laid and is from ten to eighteen inches above the same and also that much above the old pavement mentioned to plaintiff's great damage. The petition so alleged and also that said pavement was of inferior quality and not properly laid, and that objections in writing on these grounds, and also that the pavement was laid much above the established grade, were duly filed with the city clerk before the city council assessed the costs thereof, and that it was not laid at the established grade was known to the members of the city council before making an assessment. That body levied an assessment against the plaintiff's lots July 13, 1910, for the cost of said pavement in front of the east forty-four feet of lot five $357.80, and in front of the east forty-four feet of lot six $357.27, and assessment certificates were prepared accordingly. These were about to be delivered to the contractor when this suit was begun praying that defendants be enjoined from so doing and from collecting the assessment. In the second case, *Samuel E. Curtis et al. v. the same defendants,* the allegations were substantially the same save that plaintiff owned the east half of lots seven and eight immediately south of those of Shaver, and the elevation of the new paving was from two to ten inches above the established grade. In the third case, *A. W. Hudson v.*

*the same defendants,* like averments are found in the petition save that plaintiff's lots one and two in Stewart & Huegles subdivision of lot one in block one of Scott & Dean's addition are on the opposite side of the street and next to East Walnut street, and the elevation of the new pavement is from ten to two inches above the established grade. A demurrer on the ground that the facts stated did not entitle the plaintiff to the relief prayed was filed in each case. These demurrers were at first overruled, but on the following day the orders so ruling were set aside and the demurrers sustained. The plaintiff in each case refused to plead further and appealed.—*Affirmed.*

*E. P. Hudson* for appellants.

*Stipp & Perry* for appellees.

LADD, J.—The three cases were submitted together. Neither the regularity of the proceedings by nor the authority of the city council in the matter of paving East

1. MUNICIPAL CORPORATIONS: public improvement: exercise of power.

Third street in Des Moines is challenged save in contending that, inasmuch as the pavement in front of Shaver's lots was from ten to eighteen inches above the established grade and in front of those of Curtis and Hudson from two to ten inches above the same, that body was without jurisdiction to make the improvement or to assess the costs thereof against said lots. Appellees say this objection is not jurisdictional, and in any event, as it was presented in writing before the city council, appellant's remedy was by appeal from the ruling of that body to the district court rather than through an independent action in equity.

To dispose of these questions it will be necessary to refer to the statutes on the subject. The city is given plenary power over the streets by chapter 6, title 5, of the Code. The chapter following relates to their improvement

and the levy of special assessments to cover the cost. The general power of permanently improving streets in particulars mentioned therein is conferred on cities by section 792 of the Code and the manner in which such power shall be exercised in part prescribed. That section reads:

Cities shall have power to improve any street, highway, avenue or alley by grading, parking, curbing, paving, graveling, macadamizing and guttering the same or any part thereof, and to provide for the making and reconstruction of such street improvements, and to assess the costs on abutting property as provided in this chapter; but the construction of permanent parking, curbing, paving, graveling, macadamizing or guttering shall not be done until after the bed therefor shall have been graded, so that such improvement, when fully completed, will bring the street, highway, avenue or alley up to the established grade; provided that only so much of the cost of the removal of the earth and other material as lies between the subgrade and the established grade shall be assessed to abutting property.

The manner of exercising a power if possessed is seldom jurisdictional and it is not so declared here. The design evidently was to cast upon the city the burden of bringing the bed of the street to a condition such that the added improvement when completed will be at grade. Neither the preparation of the bed nor the establishment of the grade even is essential as a condition precedent to the adoption of a resolution of necessity or the ordering of the improvement. This was decided in *Allen v. City of Davenport,* 107 Iowa, 90, where the court said:

We are constrained to hold that neither the law nor the city charter makes the establishment of the grade a condition precedent to the passage of the resolution for the work, and, as the purpose and intent of the law are to make such improvement permanent and not subject to change after it is once completed, without liability for damages by reason thereof, it is sufficient if the grade is established at such time as that the improvement may be made with reference thereto. In other words, an ordinance

fixing the grade is not jurisdictional and need not precede
the resolution ordering the improvement. If so, then it
necessarily follows that the grading of the bed of the
street in conformity therewith it not jurisdictional.

These matters relate to the manner of making the im-
provement and not to the power of the city council to order
it. This may be exercised only upon petition of owners
of a majority of the lineal feet abutting on the street to
be improved or in the absence of petition when directed
by three-fourths of all the members of the council. Sec-
tions 763, 764, Code. Section 810 provides that:

When the council of any such city shall deem it
advisable or necessary to make or reconstruct any street
improvement or sewer authorized in this chapter, it shall,
in a proposed resolution, declare such necessity or advis-
ability, stating the kind of material proposed to be used
and method of construction, whether abutting property
will be assessed, and, in case of sewers, the kind and size,
and what adjacent property is proposed to be assessed
therefor, and in both cases designate the location and
terminal points thereof, and cause twenty days' notice of
the time when said resolution will be considered by it
for passage to be given by four publications in some news-
paper of general circulation published in the city, the last
of which shall not be less than two or more than four weeks
prior to the time fixed for its consideration, at which time
the owners of the property subject to assessment for the
same may appear and make objection to the contemplated
improvement or sewer and the passage of said proposed
resolution, at which hearing the same may be amended and
passed or passed as proposed. (Section 811.) Upon com-
pliance with the preceding section, the council may, by
ordinance or resolution, order the making or reconstruction
of such street improvement or sewer, but the vote shall be
by yeas or nays, and entered of record and the record shall
show whether the improvement was petitioned for or made
on the motion of the council.

The manifest design of these statutes is to
afford abutting property owners an opportunity to

be heard on the propriety of making the proposed improvement, the character of that to be made, and in a way to bring them in as parties to the enterprise. They are to bear the burden of the cost, and if the improvement be inadequate, of poor material, or of inefficient workmanship, it will be for them to pay for replacing by other pavement or sewers as these are required. In these circumstances it would be unfair for the council to proceed without availing itself of the counsel of the abutting owners. The tendency of modern legislation is to give them a larger voice in the matter of public improvements, and this seems to have resulted in safeguarding the public interest with a vigilance scarcely otherwise attainable.

Moreover such proceedings are *invitum,* and the statutes are to be somewhat strictly followed. Especially is this true with reference to those preliminary steps which appear to have been intended as essential to the exercise of power by the city council. Section 810 clearly specifies what shall be done, and the section following inferentially declares that only upon so doing shall the order contemplated be made. Objections to the improvement or its character would be of no avail unless interposed previous to directing it to be made, and for this and other reasons suggested we are inclined to regard compliance with section 810 as a condition precedent to the exercise of the power by the council to direct the pavement of the streets or the laying of sewers. *Bennett v. Emmetsburg,* 138 Iowa, 67; *Reed v. Cedar Rapids,* 137 Iowa, 107; *See Coggeshall v. Des Moines,* 78 Iowa, 235; *Dubuque v. Wooton,* 28 Iowa, 571; *Starr v. Burlington,* 45 Iowa, 87. Though the decisions are not uniform, the doctrine as stated and to which this court seems committed is sustained by the weight of authority, though much necessarily depends on the language of the statute. *Smith v. Toledo,* 24 Ohio St. 126; *Bank of Columbia v. Portland,* 41 Or. 1 (67 Pac. 1112); *White*

2. SAME: observance of statutes.

*v. Stevens*, 67 Mich. 33 (34 N. W. 255); 1 Elliott, Roads
and Streets (3d Ed.) section 610; 2 Page and Jones on
Taxation by Assessment, section 830.

In Indiana in construing statutes somewhat like those
of this state, the courts hold that, inasmuch as the city
has plenary authority over the streets and their improve-
ment and assessments for the payment thereof, such pro-
visions are directory, and, if afforded an opportunity
to be heard at some time before the levy, the
proceedings will not be declared invalid for irregularities
in relation to the resolution of necessity or notice thereof.
*Barber Asphalt Paving Co. v. Edgerton*, 125 Ind. 455
(25 N. E. 436); *Hughes v. Parker*, 148 Ind. 692 (48 N.
E. 243); *Pittsburg, etc., Ry. v. Fish*, 158 Ind. 525 (63
N. E. 454).

We are not inclined to go to this extent, but do agree
with that court in recognizing the plenary powers of cities
and incorporated towns over the streets, and probably the
Legislature might have authorized the rule which prevails
in that state. The statutes quoted seem to contemplate a
preliminary resolution of necessity together with notice
and an opportunity to be heard as a condition precedent
to ordering the improvement, and these, as said, we regard
as jurisdictional. In *Comstock v. City of Eagle Grove*,
133 Iowa, 589, notice to bidders was not published as re-
quired by statute and this was held to be jurisdictional,
but the decision has since been overruled. *Clifton Land
Co. v. Des Moines*, 144 Iowa, 625; *Nixon v. Burlington*,
141 Iowa, 316; See *Lightner v. Greene Co.*, 145 Iowa, 95.
In *Bennett v. Emmetsburg*, 138 Iowa, 67, several irreg-
ularities were pointed out, but the decision may be sustained
because of failure to adopt a resolution of necessity. In
*Carter v. Cemansky*, 126 Iowa, 506, the improvement was
not such as may be assessed against abutting property. In
*Gallaher v. Garland*, 126 Iowa, 206, the assessment, in so
far as it included grading of the bed of the street prepar-

atory to putting gravel thereon, was held to be void, and
as it was impossible to separate the cost of the grading
from that of the gravel, the collection of the entire assess-
ment was enjoined. This appears to have been on the
ground that, though the resolution of necessity included
the grading as well as graveling, the notice as published
indicated graveling only. The decision follows *Carter v.
Cemensky* in holding that the assessment of costs for an
unauthorized improvement is void. This is necessarily so,
for in that event the council acts in excess of its powers.
The only case construing the manner of performing the
contract for making of the improvement as jurisdictional is
that of *Hubbell Son & Co. v. Bennett Bros.*, 130 Iowa, 66.
No defect or irregularity in the proceedings was complained
of. The pavement was to be constructed at the established
grade, but the engineer furnished the contractor the wrong
grade and it was constructed accordingly. This was a defect
in the execution of the contract and did not go to the
authority of the city to enter into it. Acceptance of such
performance by the city undoubtedly was not binding
on the abutting lot owners, and they were at liberty
to interpose objections thereto as an error or irreg-
ularity in the proceedings before the city council and
invoke the jurisdiction of the courts by appeal in event
of an adverse ruling. Section 839, Code. But "all objec-
tions to errors, irregularities, or inequalities in the making
of said special assessments, or in any of the prior pro-
ceedings or notices, not made before the council at the
time and in the manner herein provided for, shall be
waived except where fraud is shown." Section 824, Code.

Had the city council undertaken to order any improve-
ment such as contemplated in section 792 of the Code
at other than the established grade as in *McManus v.
Hornaday*, 99 Iowa, 507, the decision in the *Hubbell* case
might be sound, but the defect, as pointed out, was not that
the council acted in excess of its powers but in the manner

in which the contractor performed a perfectly valid contract. *Mayor and City Council of Baltimore v. Porter,* 18 Md. 284 (79 Am. Dec. 686), was relied on in the Hubbell case, but the point there decided was that, as the act under which the improvement was undertaken by the city commissioners required the mayor and city council first to determine that it was "consistent with the public good" and some other matters, the city commissioner was without authority to make the improvement until this had been done. The variance in *Hubbell Sons & Co. v. Bennett Bros.,* was extreme, but in the cases at bar only a few inches and possibly in surroundings such that the pavement as laid may have been more acceptable than it would have been if exactly at grade. Some variance is to be expected, and whether sufficient to invalidate the assessment is an appropriate inquiry for the city council. The parties so construed the law in the first instance, and only after this had been done sought relief in equity.

We are of the opinion that appellant's exclusive remedy was through objections filed with the city council and by appeal from its ruling if adverse, and, as this holding is inconsistent with *Hubbell Sons & Co. v. Bennett Bros.,* that decision is overruled.—*Affirmed.*